ORIGINAL

FILED
AUG 28 2007
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

JOHN C. FRAZIER III and LINDA FRAZIER, d/b/a MARKLEY COVE RESORT; LAGUNA HERMOSA CORPORATION, d/b/a RANCHO MONTICELLO RESORT; REL LIMITED, d/b/a SPANISH FLAT RESORT; AND STEELE PARK RESORT, INC.

Plaintiffs,

v.

UNITED STATES,

Defendant.

Case No. 07-636 C

Judge ____________

**PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION**

Pursuant to Rules 65(a) and 65(b) of the Rules of the Court of Federal Claims ("RCFC"), Plaintiffs John C. Frazier, III and Linda Frazier (d/b/a Markley Cove Resort), Laguna Hermosa Corporation (d/b/a Rancho Monticello Resort), REL Limited (d/b/a Spanish Flat Resort), and Steele Park Resort, Inc. (together, "Resort Owners"), respectfully move this Court for a temporary restraining order and preliminary injunction staying the response date of September 5, 2007 for proposals responding to the June 7, 2007 Lake Berryessa Concession Prospectus (Solicitation Number 07SS240008 ) ("Prospectus") issued by the United States Department of the Interior's Bureau of Reclamation ("Reclamation"). The Resort Owners also respectfully request the Court to issue an order staying all subsequent deadlines related to the Prospectus, including the termination dates for the Resort Owners' current contracts, and enjoining Defendant, its officers, agents, employees, and/or representatives from accepting proposals in

response to, or making a contract award under, the Prospectus pending a hearing on the merits and final disposition of this action or until further order of this Court.

As additional grounds for this motion, and as set forth more fully in the accompanying Complaint and Memorandum in Support of this Application, the Resort Owners state as follows:

1. The Resort Owners, who are incumbent concessionaires for four of the seven concessions at Lake Berryessa that are the subject of the Prospectus, have filed a Complaint challenging the Bureau of Reclamation's unlawful Prospectus. The Prospectus solicits bids for new concession contracts for the seven resorts that currently are operating at Lake Berryessa.

2. The Prospectus is unlawful, however, because it: (a) violates the requirements of Public Law 96-375 by failing to require new concessionaires to pay "fair value" for all of the Resort Owners' concession assets and interests should the Owners fail to win a new concession contract; (b) imposes requirements upon the Resort Owners that effect a *de facto* disqualification of the Owners from consideration for any new concession contract and otherwise impermissibly discriminate against the Resort Owners in favor of Forever Resorts, Inc.;[1] and (c) incorporates and is based upon appraisals of the Resort Owners' concession interests that violate Public Law 96-375 and Reclamation's own directives and instructions for the appraisals.

3. If the Prospectus is not enjoined, the Resort Owners will be irreparably harmed because, among other things, they will be effectively disqualified from consideration for the new contracts. Indeed, as Reclamation well knows, the Prospectus's requirement that the Resort

[1] Forever Resorts is a large corporate provider of houseboat rentals and other concession services. It is by far the most active and interested large corporation that is known to be an interested bidder for the Lake Berryessa concessions. App. 62, Declaration ("Decl.") of Robert White at ¶ 11. In this respect, it is noteworthy that Reclamation already has awarded to Forever Resorts the Pleasure Cove Resort concession at Lake Berryessa, (currently in bankruptcy and not a party to this suit). *See* Appendix to Complaint ("App.") 359. That concession contract essentially provides Forever Resorts with a "pre-qualification" and a preference for the existing concessions. App. 377.

Owners must remove all private and concession property before the termination of the contracts in 2008-2009 is impossible to meet, and will result in the Resort Owners being disqualified from consideration from the new contracts. App. 63, White Decl. at ¶ 13. In addition, the requirements of the Prospectus may force the Resort Owners to go out of business before the termination of their current contracts, in which event either Reclamation or the new concessionaire will assume control over, or outright ownership of, the resort facilities at no cost. App. 65, White Decl. at ¶ 20. Finally, the Resort Owners may be forced to either transfer their facilities and concession operations to a new concessionaire at a substantially undervalued price or tear down the facilities and other personal property at their own expense *Id.*

4. In issuing the Prospectus, Reclamation has inexplicably disregarded the fact that, in response to the agency's inducements, the Resort Owners have invested millions of dollars in facilities and amenities to satisfy public demand. App. 61, White Decl. at ¶ 8-9. These services and amenities include approximately one hundred lodging units, restaurant facilities, extensive marina and boating facilities, and water and electricity systems. *Id.* at ¶ 9. Indeed, since the creation of Lake Berryessa in 1957, Reclamation has achieved its mission to "provid[e] for public enjoyment through outdoor recreation" at the lake solely by inducing private businesses, including the Resort Owners, to incur the costs of developing and operating visitor amenities. *See* App. 16. In this way, the Resort Owners' investments at Lake Berryessa have allowed Reclamation to avoid the substantial costs associated with fulfilling one of its "missions" (*i.e.,* providing visitor services) while receiving substantial fees from concessionaires, including the Resort Owners, who have provided, and continue to provide, such services.

5. After fifty years of profiting from this arrangement, Reclamation recently has determined that there may be a greater economic opportunity for the agency at the lake. App. 12.

In order to capitalize upon this perceived economic opportunity, Reclamation has decided, through the Prospectus, to demand the immediate removal of all private and concession property from the lake, including that of the Resort Owners, and to replace the Resort Owners' contracts with new concession contracts.[2] In so doing, Reclamation has demonstrated a complete disregard for the multi-million dollar investments the Resort Owners have made to meet the public's demand for visitor services and amenities at Lake Berryessa, as well as the Resort Owners' long and commendable history of providing concession services at the lake.

6. In an apparent effort to minimize the Resort Owners' ability to challenge the current Prospectus and to prepare bids for the new contracts, Reclamation has imposed an accelerated schedule for the Lake Berryessa procurement during the peak visitor season for the Resort Owners. Moreover, despite recently expressing a willingness to extend this deadline, Reclamation now represents that it will proceed with the current deadline. App. 2. Reclamation has stated that failure to meet this deadline precludes consideration for the new contracts.

**Jurisdictional Allegations**

7. The Resort Owners are prospective bidders for the new contracts and are "interested parties" within the meaning of 28 U.S.C. § 1491(b). *See Advanced Sys. Tech. v. United States,* 69 Fed. Cl. 474, 482 (2006) (the statute is clear that the Court has jurisdiction over . . . an action objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award of a contract, *i.e.,* a pre-award protest"). In addition to being incumbent contractors for four of the seven concession contracts that are the subject of the Prospectus, each of the Resort Owners has a substantial chance at receiving an award of a new concession

[2] The Resort Owners' concession contracts are scheduled to expire as follows: (1) Markley Cove Resort May 26, 2009; (2) Rancho Monticello - June 15, 2008; (3) Spanish Flat - July 13, 2008; and (4) Steele Park Resort - May 26, 2009. *See* App. 68, FBO Daily Issue dated June 9, 2007.

contract. *See Bannum Inc. v. United States,* 404 F.3d 1346, 1352 (Fed. Cir. 2005); *Asia Pac. Airlines v. United States,* 68 Fed. Cl. 7, 17 (2005). Because of this, each of the Resort Owners faces substantial, irreparable harm unless the requested relief is granted by the Court pursuant to 28 U.S.C. § 1491(b)(2). The Resort Owners are required to file their protest at this time to preserve their objections to the Prospectus. *See Blue and Gold Fleet, L.P. v. United States*, 2007 WL 1815678 (Fed. Cir. 2007).

8. The Resort Owners are entitled to the requested injunctive and declaratory relief because, as noted, the Prospectus: (a) violates the "fair value" requirements of Public Law 96-375; (b) impermissibly discriminates against the Resort Owners in favor of Forever Resorts; and (c) relies upon appraisals of the concessions and economic interests of the Resort Owners that violate Public Law 96-375 and Reclamation's own instructions and directives.

9. If not stayed at this time, the Prospectus will cause the Resort Owners to suffer a *de facto* disqualification from consideration for the new concession contracts, and to lose their businesses prior to the termination of their contracts with Reclamation, which would result in a takeover of their businesses by Reclamation or a new concessionaire. There will be no remedy for these losses, once incurred. Moreover, Reclamation's actions in pursuing the unlawful Prospectus is a denial of the Resort Owners' right to a fair procurement which also will result in significant prejudice and harm to the Resort Owners. This harm to the Resort Owners also is irreparable and cannot be compensated through the award of monetary damages.

10. Unless enjoined by the Court, proposals in response to the Prospectus will be due no later than 4 p.m. (Pacific Time) on September 5, 2007.[3]

[3] The Prospectus requires that questions regarding the Prospectus be submitted at least 30 days in advance of the proposal deadline. Accordingly, the allegations and claims raised in this bid protest were submitted in writing to the designated Reclamation representative on

**Factual Background**

11. Reclamation states that it issued the Prospectus in order to procure the following services at Lake Berryessa: lodging, food service, marina and associated operations, campgrounds and RV parks, houseboat rentals, and retail sales. App. 11. Reclamation issued the Prospectus as part of its mission to assist "States, Native American Tribes, and others [to] meet their new and ever-changing water needs while balancing a multitude of competing uses, including recreation sites" and to "provid[e] for public enjoyment through outdoor recreation." App. 16.

12. Since the creation of Lake Berryessa, Reclamation has fulfilled its visitor use mandates through inducements to private businesses, such as the Resort Owners, to build and operate visitor concession facilities. Indeed, soon after the lake was created, Reclamation entered into a Management Agreement with Napa County, California, ("the County"), to allow the County to act as Reclamation's recreation management contractor for the lake. *See* App. 44. Pursuant to its authority under the Management Agreement, the County determined that, due to limited resources and because a majority of the public use of Lake Berryessa was by non-residents, recreation services and facilities at the lake should be provided through private concession contracts. *See* App. 221. As a result, the County actively sought out businesses, including the Resort Owners, to operate the Lake Berryessa concessions. App. 60, Decl. of Robert White at ¶ 3. In soliciting these businesses, the County promised that the resort concessions would enjoy "economic stability" through long-term lease commitments. *Id.* at ¶ 4.

---

July 19, 2007, more than 30 days in advance of the September 5 deadline. App. 77. On July 26, 2007, the DOI Solicitor's Office orally advised Plaintiffs' counsel that Reclamation had reviewed the July 19 letter but would take no action in response. The Solicitor's Office also indicated that further objection to the Prospectus would be futile.

Accordingly, the County provided the concessionaires with long-term contracts to allow them to obtain the necessary bank loans for the development of visitor facilities. *Id.*

13. As a result of the County's inducements made on behalf of Reclamation, the Resort Owners and other concessionaires entered into seven long-term concession contracts in 1958 and 1959 for recreation services on 1,700 acres of land and water at various sites around the lake. App. 60, White Decl. at ¶ 5; App. 225. These agreements were later modified to allow for 50-year terms. App 60, White Decl. at ¶ 5.

14. To achieve the overall purpose of the concession contracts, *i.e.*, to provide visitor services and facilities, Napa County encouraged the concessionaires (including the Resort Owners) to construct, at their own expense, long-term mobile home/trailer lease sites at the lake. *Id.* at ¶ 6. At the same time that the mobile home sites were being developed, some of the short-term facilities, *i.e.*, camping, lodging, marinas, and retail, also were developed by the concessionaires. App. 44. The lake proceeded to be developed with the concessionaires' funds according to this pattern over the next several years. *See* Legislative History for Pub. L. 96-375 (comments by Rep. Clausen), App. 262.

15. The Resort Owners' long-term mobile home sites were an immediate success and have since become the core economic base for the concession operations at Lake Berryessa. App. 44. Today, there are approximately 1,300 such sites at the lake, the majority of which are part of the Resort Owners' concessions. The sites are almost fully occupied and account for approximately 50 percent of the overall revenue for the concessions. App. 61, White Decl. at ¶ 7. Because of their permanent nature, the removal of these sites would result in environmental consequences, such as soil and vegetation disturbances. *Id.* In addition, the removal of the sites could result in legal consequences. For example, because a significant number of these sites are

occupied by permanent tenants, their removal would implicate the protections of the California Mobile Home Residency Act. *Id.*

16. To fulfill the purposes of their concession contracts, the Resort Owners over the years invested millions of dollars, as well as substantial time and effort, in constructing improvements and amenities at the resorts. App. 61, White Decl. at ¶ 8. These improvements include, but are not limited to: grading and earth moving for parking lots, road and site construction, marinas for both small watercraft and large houseboats, docks, boat slips, fuel stations, food service and retail facilities, shop buildings, bath houses, cabins, motels, travel trailer sites, tent campsites, mobile home sites, picnic areas, boat storage buildings, boat storage lots, extensive landscaping, electric and water distribution systems, sewage distribution and treatment systems, and water purification systems. Many of these improvements cannot be removed because they involve improvements and alterations to the land.

17. These improvements were paid for solely by the Resort Owners, and for the purpose of fulfilling Reclamation's public visitation mission at the lake, after obtaining prior approval from Reclamation. Reclamation has benefited from the construction of these improvements, both economically and in terms of fulfilling its "public enjoyment through recreation" mission. In addition, both Reclamation and any future concession awardee will benefit from the construction of these improvements. If the Prospectus is not enjoined by this Court, the Resort Owners will lose their substantial investments in the concessions, with Reclamation and Forever Resorts the likely recipients of the resulting windfall.

**Summary Of The Resort Owners' Bid Protest**

18. The Resort Owners have filed a complaint against the United States for injunctive and declaratory relief pursuant to this Court's bid protest jurisdiction. *See* 28 U.S.C. § 1491(b).

As set forth in the Complaint and the Memorandum in Support of this Application and Motion, the Prospectus is unlawful for the following reasons:

19. ***Public Law 96-375.*** The Prospectus fails to comply with Public Law 96-375, rendering it contrary to law. The statute requires that a new concessionaire pay "Fair Value" for the Resort Owners' assets:

> Notwithstanding any other laws to the contrary, all permanent facilities placed by the concessionaires in the seven resorts at Lake Berryessa shall be considered the property of the respective current concessionaires. Further, any permanent additions or modifications to these facilities shall remain the property of said concessionaires: Provided, That at the option of the Secretary of the Interior, the United States may require that the permanent facilities mentioned herein not be removed from the concession areas, and instead, pay fair value for the permanent facilities or, *if a new concessionaire assumes operation of the concession, require that new concessionaire to pay fair value for the permanent facilities to the existing concessionaire.*

Section 5(b) of Pub. L. 96-375. App. 274. Emphasis added. The law makes clear that any new concessionaire that takes over the Resort Owners' concession, in this case through new concession contracts, must pay "Fair Value" to the Resort Owners for all permanent facilities. This obligation includes not only improvements to the land, but appurtenances and other facilities as well.

20. The Prospectus, however, violates Public Law 96-375 in two ways. First, the Prospectus purports to allow a prospective bidder to select, and pay for, only those assets that the bidder wishes to retain under a new concession contract. App. 35. This directly contravenes the statute's requirement that the Resort Owners receive "fair value" for their assets.

21. Second, the Prospectus purports to provide that the Resort Owners shall receive "Fair Market Value" for their concession assets, a valuation measure that is different from the Fair Value metric specifically required by Public Law 96-375. The adoption of the Fair Market Value metric has resulted in an improper undervaluation of the Resort Owners' assets. As just

one example, the Fair Value for Rancho Monticello has been appraised at $27,500,000 while Reclamation's appraisal is far less at $11,250,000. App. 64, White Decl. at ¶ 18. The Fair Value appraisals for the other resorts have resulted in similar discrepancies with Reclamation's appraisals. *Id.* The undervaluation of the Resort Owners' assets not only inures to the benefit of any future contract awardee, such as Forever Resorts, in the form of a reduced purchase for any resort assets, but denies the Resort Owners the value they are entitled to receive under the statute. This failure to comply with Public Law 96-375 renders the Prospectus invalid, and justifies injunctive relief.

22. ***Discrimination Against The Resort Owners In Favor Of Forever Resorts.*** The Prospectus arbitrarily, capriciously, unlawfully, and without rational basis discriminates against the Resort Owners in favor of Forever Resorts. Indeed, the Prospectus appears to be tailored to meet Forever Resorts' apparent strengths, *i.e.*, its size and financial resources, rather than to meet the best interests of the Government. *See* App. 27. Of course, such preferential treatment is explicitly prohibited by both the Prospectus and Reclamation's controlling rules and regulations. App. 24, 295.

23. The Prospectus arbitrarily, capriciously, unlawfully, and without rational basis discriminates against the Resort Owners, thus favoring Forever Resorts, in several ways. First, the Prospectus imposes an impossible requirement upon the Resort Owners before they may qualify for the new contracts; specifically, the Prospectus requires the Resort Owners, but not the new concessionaires, to remove all mobile homes, trailers and other improvements from the concession property prior to the termination of the current concession contracts. App. 31. This effects a prior *de facto* disqualification of the Resort Owners from consideration for the new

concession contracts because the removal of all private property cannot be achieved before the termination of the Resort Owners' current contracts in 2008-2009. This is so because:

(a) In order to comply with California environmental and transport regulations, as well as the California Mobile Home Residency Act, the complete removal of the property could take as long as five years. *See* App. 63, White Decl. at ¶ 13. In particular, Reclamation has failed to account for delays that will be associated with the limited number of state-issued permits that are available to transport mobile homes and with the resolution of the county tax liens that are attached to certain abandoned mobile homes. *Id.*

(b) Even if it were physically possible to remove all tenants by the removal deadline, the Resort Owners would have to begin removing tenants well in advance of the termination of the current concession contracts. *Id.* at ¶ 14. This would place the Resort Owners in the impossible position of being in potential breach of their contracts with their tenants, which run until the end of the current concession contracts. *Id.* The disputes and delays with tenants that would be associated with these potential breaches would make it impossible to meet Reclamation's removal deadline. *Id.*

(c) Reclamation has failed, as it is required to do, to identify all of the property and improvements that are to be removed. App. 30, App. 64, White Decl. at ¶ 15. Similarly, Reclamation has failed to satisfy its obligation to complete an Environmental Impact Statement for the removal of individual improvements. App. 30, App. 64, White Decl. at ¶ 15. Reclamation's failure to satisfy these obligations renders it impossible for the Resort Owners to comply with Reclamation's removal deadline. App. 64, White Decl. at ¶ 15.

24. The Prospectus also discriminates against the Resort Owners by requiring that, if any mobile units are left after the termination of the contracts, the Resort Owners may be declared in

default of their agreements. App. 31. This could lead to the seizure of their permanent improvements, thereby depriving the Resort Owners of all value from their investments in the concession contract sites. *Id.* In this respect, the Prospectus again places the Resort Owners in an impossible situation – the Prospectus essentially prevents the Resort Owners from being able to remove all of their property by the removal deadline, and then allows Reclamation, or more particularly, Forever Resorts, to assume control over the property at no cost after the deadline passes.

25. The Prospectus further discriminates against the Resort Owners by not allowing the Resort Owners to remove the mobile homes in phases during the term of a new concession contract (should one be awarded to a Resort Owner). As a result, the Resort Owners will be deprived of a revenue source that is critical to their ability to stay in business while awaiting the installation of the new facilities. App. 64, White Decl. at ¶ 17. This could result in business failure for some or all of the Resort Owners. *Id.* By no mere coincidence, in the event of such a business failure, the Pleasure Cove contract provides that Forever Resorts will be awarded with an interim contract for any failed concession. App. 377. In contrast, a new concessionaire will be permitted to phase out mobile homes during a new concession contract term and, thus, will enjoy the benefit of the interim rental income during the installation of the new facilities. App. 31.

26. In contrast to this discriminatory treatment of the Resort Owners, the Prospectus and its related documents unfairly and unlawfully favor Forever Resorts, and penalize the Resort Owners, in the following ways:

a. The Prospectus awards additional points for a bidder who bids upon multiple concession opportunities. This provides an unfair advantage to Forever Resorts, which is the

only known interested bidder with sufficient financial resources to independently bid upon multiple concessions. This advantage is particularly unfair given that the Resort Owners, as small businesses, do not have the financial ability to independently bid upon more than one concession opportunity. Indeed, in these circumstances, the additional points provision amounts to a penalty against the Resort Owners and directly contravenes Reclamation's policy and directives regarding "fair competition" and equal treatment for small businesses. *See* App. 68, 295.

b. The Prospectus allows a new bidder, such as Forever Resorts, to receive a reduction of franchise fees owed to Reclamation to repay any costs associated with tenant removal. In contrast, the Prospectus does not provide the Resort Owners with such fees while demanding that they pay all costs for removal of tenant personal property. App. 39A, 233, 236; App. 67, White Decl. at ¶ 25.

27. ***Invalid Economic Appraisals.*** In connection with its interpretation of the requirements of Pub. L. 96-375, the Prospectus relies upon appraisals for each of the Lake Berryessa resorts. The purpose of these appraisals is to establish the purchase price for those resort facilities that are "designated to remain for the next concession contract." App. 35 (citing Part 7.10). The appraisals, however, are defective because they fail to comport with the Statement of Work and Appraisal Instructions issued by Reclamation to its appraisers.[4]

---

[4] The appraisals also are defective because they rely upon an outdated facilities condition assessment report prepared by Kleinfelder, Inc. ("Kleinfelder Report"). *See Prospectus, 2002 Environmental Compliance and Facility Condition Assessment Report.* The Kleinfelder report purports to assess the condition of various facilities for each of the resorts and to recommend corrective actions for perceived problems. In response to this Report, the Resort Owners performed in a timely manner the maintenance and improvements that were recommended in the Report. White Decl. at ¶ 24. The Report, however, has not been updated to reflect these improvements and maintenance efforts.

28. The valuations performed by the appraisers do not comply with the Statement of Work and the Appraisal Instructions because they fail to consider the Resort Owners' improvements to the land, including, but not limited to, such items as "cut and fill" work, grading, road construction and parking lots; App. 65, White Decl. at ¶ 19. Similarly, the appraisers failed to include improvements such as retaining walls, dock facilities, mobile home site pads, and sewage and utility connections. These permanent improvements, which represent millions of dollars of the Resort Owners' investments, were necessary to the development of the lake, and will be used by both Reclamation and any new concessionaire. App. 61, White Decl. at ¶ 8-10. These improvements also are an integral part of the "economic value of the concession" that is required to be valued by the Appraisal Instructions. App. 320. Inexplicably, however, the appraisals completely disregard these assets and improvements in establishing a "purchase price" for the resorts for purposes of the procurement.

29. Further, the appraisers failed to conduct an evaluation of the concessions through the use of all three appraisal methods, performing instead only a "Cost Approach" appraisal. This, of course, contravenes the express requirement in the Statement of Work and Appraisal Instructions that an Income Approach valuation and a Direct Sales Comparison Approach valuation be performed on each of the resorts. *See* App. 300, 320. For this reason alone, the Prospectus is invalid and injunctive relief warranted.

30. Moreover, the failure to perform valuations pursuant to the other methods has resulted in the drastic undervaluations of the Resort Owners' assets. In this respect, the appraisers' failure to perform an Income Approach valuation for the resorts is particularly egregious, especially in view of the Appraisal Instructions' directive to appraise the "economic value of the concessions." The only way to properly arrive at the economic value of the Resort

Owners' concessions is through an Income Analysis. Accordingly, the Prospectus is invalid and Reclamation should be enjoined from proceeding with accepting offers until the appraisals are properly completed and reasonable purchase prices are established for the resort assets.

**Requirements For Issuing Injunctive Relief**

31. The Resort Owners are entitled to injunctive relief because, if the procurement proceeds under the current Prospectus, they will not be able to qualify for consideration for the new contracts. If they are not qualified to be considered for the new contracts, the Resort Owners will be forced to: (a) transfer their facilities and concession operations to a new concessionaire at a substantially undervalued price; (b) tear down the facilities and other personal property at their own expense; or (c) abandon the facilities, in which event Reclamation or the new concessionaire will assume control and/or ownership at no cost. App. 65, White Decl. at ¶ 20. There is no adequate legal remedy for these consequences.

32. Moreover, if the Prospectus is not enjoined, the Resort Owners will lose their right to a legally valid procurement, will lose their customers and tenants, will be potentially liable for breach of tenant agreements, and will lose their contractual right to the opportunity to make a fair profit prior to the termination of their agreements. *Id.* at ¶ 21.

33. In contrast to the harm that will result to the Resort Owners, Reclamation will not be harmed by the issuance of a preliminary injunction. Indeed, Reclamation already has indicated that time is not of the essence for this procurement by recently indicating that it would be willing to provide an extension of time for the submission of proposals. App. 357. As incumbent contractors, the Resort Owners are ready, willing, and able to continue to perform under the terms of the existing contracts until the Court resolves this matter. App. 66, White Decl. at ¶ 22.

In other words, the Lake Berryessa visitor services will continue to be available to Reclamation and the public under the terms of the existing contracts. *Id.*

34. Prospective bidders will not be harmed by the issuance of injunctive relief. To the contrary, prospective bidders will benefit by the resolution of the issues raised by this lawsuit prior to submitting their final bids to Reclamation. These issues present critical questions, such as the proper value of the Resort Owners' facilities, that will significantly affect the terms of the proposals for the new concessions contracts as well as the terms of any new contract that ultimately is awarded. There is no legitimate reason to require prospective bidders, including the Resort Owners, to continue to incur the considerable expense and burden of preparing and submitting proposals for a procurement that may very well be subject to significant changes. If the Prospectus is not enjoined, bidders will be relying on a flawed document with foreseen and unforeseen detrimental consequences to existing and/or new concessionaires.

35. The Resort Owners are also entitled to injunctive relief because the Bureau of Reclamation's unlawful solicitation will injure the public's interest in preserving the integrity of the solicitation/procurement process and ensuring that the process is fair and consistent with the requirements of law, and applicable agency rules, regulations and directives.

36. As demonstrated in the accompanying memorandum, the Resort Owners are likely to succeed on the merits of their claims and, if denied a temporary restraining order and preliminary injunction, will have no adequate remedy at law. Entering the temporary restraining order and preliminary injunction will preserve the status quo and protect the public interest in the validity of the contracting process.

37. On August 20, 2007, the Resort Owners provided notice of their intention to file this Application and Motion to the parties enumerated in Appendix C of the Rules of this Court.

ACCORDINGLY, the Resort Owners request this Court to enter a temporary restraining order and issue a preliminary injunction in accordance with the accompanying proposed order.

Respectfully submitted,

Gregory T. Jaeger
MARZULLA & MARZULLA
1350 Connecticut Ave, NW, Suite 410
Washington, D.C. 20036
Telephone: (202) 822-6760
Facsimile: (202) 822-6774

August 27, 2007

Attorney for Plaintiffs

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

| | |
|---|---|
| JOHN C. FRAZIER III and LINDA FRAZIER, d/b/a MARKLEY COVE RESORT; LAGUNA HERMOSA CORPORATION, d/b/a RANCHO MONTICELLO RESORT; REL LIMITED, d/b/a SPANISH FLAT RESORT; AND STEELE PARK RESORT, INC. | Case No. _________ |
| Plaintiffs, | Judge _________________ |
| v. | |
| UNITED STATES, | |
| Defendant. | |

**CERTIFICATE OF SERVICE**

I certify that, on August 27, 2007, I caused true and accurate copies of the following documents:

1. Complaint and Rule 7.1 Disclosure Statement;

2. Appendix of Exhibits and Index thereto; and

3. Application for Temporary Restraining Order and Motion for Preliminary Injunction, Memorandum in Support, and Proposed Order

to be delivered by hand delivery and e-mail transmission to:

John Roberson, Trial Attorney
United States Department of Justice
Civil Division, Commercial Litigation Branch
1100 L Street, NW
Washington, DC 20530 [Overnight mail zip code 20005]

William McGonigle
Marzulla & Marzulla