1-24

FILED LODGED
RECEIVED COPY
JAN 2 6 1994
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY DEPUTY

DEC 1998
1998

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MRS. JOHN "JACK" SWEETNAM, et al., Plaintiffs, vs. BRUCE BABBITT, et al., Defendants. | No. CIV 94-0063 PHX RCB<br>ORDER |

Plaintiffs in this action are residents of the Willow Beach long-term trailer village, which is within the Lake Mead National Recreation Area. Willow Beach is operated under a government concessions contract made pursuant to the Concessions Policy Act, 16 U.S.C. § 20, et seq. The concessions contract between the National Park Service ("NPS") and Willow Beach Resorts, Inc. ("WBR") expired on December 31, 1993. On November 12, 1993, Leroy Opfer, the president of WBR, notified the residents of the trailer village that their tenancy would be terminated effective December 31, 1993. On

AO 72
(Rev 8/82)

17

December 15, 1993, the NPS informed the residents that because it was unable to secure a new contract agreement with WBR, all utilities and services would be discontinued effective December 31, 1993.

On December 28, 1993, plaintiffs filed a Complaint and an Application for Temporary Restraining Order (TRO) and Order to Show Cause in Scott v. Andrus, No. CIV 79-664 PHX VAC previously assigned to the late Judge Valdemar A. Cordova. The case was assigned to another judge who was not immediately available and in his absence another judge conducted a hearing, on notice, on the TRO. A TRO restraining all defendants from (1) requiring any plaintiff to remove his or her trailer; and (2) terminating utility services serving the trailer village or other commercial areas of the Willow Beach outpost was entered on December 28, 1993. That TRO was to expire on January 12, 1994, and the parties were directed to contact the chambers of the assigned judge to arrange further proceedings.

Upon recusal by the assigned judge, the case was subsequently reassigned to this court.[1]

On January 6, 1994, the court held a status conference in

[1]Because there was a newly filed complaint, the application for the TRO was brought mostly by new plaintiffs who were not parties to 79-664 PHX VAC which was not a class action, and for other reasons, the court concluded that this was a new proceeding, separate from 79-664, and directed the clerk to docket this action as a new action to be assigned to this judge. No effort to consolidate the actions has since occurred.



AO 72 (Rev. 8/82)

order to ascertain the parties' intentions regarding future proceedings. The court informed the parties that it would conduct a hearing on January 12, 1994, and absent an application seeking other relief, e.g. an application for a preliminary injunction, that hearing would be limited to whether the court should extend the TRO for an additional ten-day period.

Rather than filing an application for a Preliminary Injunction as contemplated by Federal Rule of Civil Procedure 65(b), plaintiffs filed a "New Application for Order Enforcing 1980 Injunction, for Temporary Restraining Order and Order to Show Cause." This new application was filed in this action, not in 79-664.

The court conducted a hearing on January 12-13, 1994, at the end of which it informed the parties that it would extend the TRO entered on December 28, 1993 for an additional ten days and take this matter under advisement. The court further informed the parties that if it determined that it was necessary to conduct a preliminary injunction hearing, they would be notified in a timely manner. The court has concluded that because of the reasons for its ruling an additional hearing on the "New Application" would be futile.[2]

[2] On January 18, 1994 the court received a letter dated January 16, 1994 from Sandra Ann Corbett, Jr., a witness at the hearing, purportedly on behalf of "Willow Beach/Colorado River Recreation Association" in which she advises the court that "We have released Mr. Stein as our attorney." and that they are seeking new counsel. Although the letter appears to



AO 72 (Rev. 8/82)

BACKGROUND INFORMATION

In 1979, the NPS informed the then-residents of the Willow Beach trailer village that because it had concluded that Willow Beach was a flood hazard area, the trailer village would be closed. The residents subsequently filed suit in District Court.

By order[3] filed on January 18, 1980, Judge Cordova found that without notice, hearing or public input, the National Park Service announced on July 13, 1979 that the Willow Beach long-term trailer village would be closed to personal occupancy effective August 16, 1979. Judge Cordova also found that the National Park Service failed to prepare and file an environmental impact statement. He further determined that the National Park Service failed to provide for early public review of the proposed floodplain management action, failed to provide adequate information for review and comment, and failed to provide an accounting for the rationale of the proposed action, all in violation of Executive Order No. 11988.

---

have been sent to counsel for the Federal defendants and WBR, it appears not to have been sent to Mr. Stein. Such a purported dismissal of its counsel by the corporate plaintiff has no present legal effect on the matter pending before the court. Mr. Stein and the limited plaintiffs for whom he has appeared should resolve the question of his representation and appropriate notification and orders of the court entered, if necessary.

[3]See Scott v. Andrus, No. Civ. 79-664 PHX VAC (Order of January 18, 1980).



AO 72 (Rev 8/82)

Judge Cordova further found that the methods used by the U.S. Geological Survey in conducting its flood hazard study were not in accordance with accepted hydrological and statistical practices and that "because of the deficiencies in the . . . flood hazard report it is difficult to tell what portions, if any, of the Willow Beach Resort would be affected by the flood flows of a 100-year storm without conducting further flood studies which comport with accepted hydrological standards."

Judge Cordova also stated that the trailer residents had long-term rental agreements which provided that the concessioner could terminate a particular rental agreement "only upon (1) failure of the renter to comply with any of the terms and conditions of the agreement, and (2) failure of the renter to comply with any of the standards, rules and regulations established by the Superintendent and/or the concessioner, provided that prior to termination pursuant to this section the concessioner shall notify the renter, in writing, of the standards, rules and/or regulations violated by the renter and, provided further, that the renter shall then have thirty days from such notification within which to correct any correctable deficiency for which such notification has been given prior to termination." Judge Cordova found that the trailer village residents neither failed to comply with the terms and conditions of the rental agreements nor failed to comply with any of the standards, rules and



AO 72
(Rev. 8/82)

regulations.

Judge Cordova's Conclusions of Law held that (1) the National Park Service had failed to comply with Executive Order No. 11988 and the National Environmental Policy Act ("NEPA"); (2) the floodplain management action at Willow Beach proposed by the National Park Service was unlawful, arbitrary and constituted an abuse of discretion; (3) the long-term rental agreements were valid and had not been terminated; and (4) plaintiffs were entitled to judgment enjoining defendants from carrying out the closure of the trailer village. His injunction provides:

> It is Ordered and Adjudged that the defendants, their officers, agents, servants, employees, and persons acting in active concert with them are hereby enjoined and restrained from closing the Willow Beach long-term trailer village personal occupancy or from carrying out any other floodplain management action within the Willow Beach floodplain which would in any way affect the rights of plaintiffs as residents of the Willow Beach long-term trailer village without first complying with Executive Order No. 11988 and applicable laws and regulations pertaining to notice and hearing.

DISCUSSION

Plaintiffs in the present action[4] argue that defendants

[4] Over fifty plaintiffs are listed in the caption of the complaint. Presumably, these are all of the current residents of the trailer village, a few of whom were plaintiffs in the 1978 litigation. The attorney who is prosecuting this action, however, has represented himself as attorney for "various plaintiffs." In response to the court's query at the January 12, 1994 hearing, counsel indicated that he actually represents only seven of the named plaintiffs and the remaining named plaintiffs have not as yet agreed to be represented by counsel or consented to their being named as plaintiffs. It thus appears that the remaining individuals listed in the caption of the complaint as plaintiffs are not



AO 72 (Rev 8/82)

should be enjoined from closing the trailer village because (1) to do so would violate Judge Cordova's 1980 injunction; (2) the NPS has not fully complied with NEPA; (3) the end of WBR's concessions contract does not extinguish plaintiffs' property interests; and (4) the Arizona Mobile Home Parks Residential Landlord and Tenant Act requires 180 days notice before plaintiffs can be evicted.

The Federal Defendants[5] respond that (1) Judge Cordova's Order was based solely on the NPS's failure to comply with Executive Order 11988 and the environmental impact statement requirements of NEPA and should have no bearing on the closure of the trailer village resulting from the expiration of the concessioner's contract; (2) the NPS's decision not to seek an interim operator of Willow Beach is not cognizable under NEPA; (3) plaintiffs cannot point to any action by the NPS which impacts the environment, and the mere maintenance of the environmental status quo does not trigger a violation of NEPA; and (4) application of the Arizona Mobile Home Parks Residential Landlord and Tenant Act would conflict with the federal government's discretion in administering the federal area and thus violate the Supremacy Clause.

---

actually parties to this lawsuit and should be removed from it.

[5] WBR and its owner, LeRoy Opfer, are also named as defendants. While they have appeared through their attorney at the various hearings (except the January 6, 1994 status conference), they have not filed any papers.



AO 72 (Rev. 8/82)

The Ninth Circuit recently reiterated that a party seeking preliminary injunctive relief must meet one of two tests. Stanley v. University of Southern California, No. 91-56185, slip op. at 78 (9th Cir. January 6, 1994). Under the first test, the party seeking the injunction must show (1) it will suffer irreparable injury if preliminary relief is not granted, (2) it will probably prevail on the merits, (3) in balancing the equities, the non-moving party will not be harmed more than the moving party is helped by the injunction, and (4) granting the injunction is in the public interest. Id. (citation omitted). Under the second test:

> [A] court may issue a preliminary injunction if the moving party demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor. Under this last part of the alternative test, even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.

Id. at 78-79 (quotation omitted) (emphasis in original).

Plaintiffs are correct that defendants have not yet complied with Executive Order 11988 and NEPA. While the government appears to be in the process of complying with them, it has not yet completed compliance. On November 4, 1993, the government issued a Draft Supplemental Environmental Impact Statement (the "Draft SEIS") and a Willow Beach Draft Development Concept Plan (the "Draft DCP"). The public comment period on these Drafts is to run through February 4, 1994 and a final SEIS/DCP is not expected to be completed



AO 72
(Rev. 8/82)

until September, 1994. NEPA cannot be satisfied until the Drafts are finalized. See 42 U.S.C. § 4332(2)(C).

Nevertheless, the relevant issue for purposes of this proceeding is not whether defendants have failed to comply with NEPA, but rather whether defendants' activities implicate Judge Cordova's Order. After reviewing that Order and the entire record of the previous litigation, the court concludes that it does not.

Judge Cordova was faced with a situation where the government told the trailer residents that it had conducted a floodplain management study and had determined that the trailer village should be shut down. Judge Cordova found that the government's study and resulting actions were procedurally flawed and refused to allow the government to evict the residents on that basis. He thus enjoined defendants from closing the trailer village on the basis of a floodplain management plan without first complying with the applicable laws and regulations. In other words, Judge Cordova ruled that the government could not affirmatively violate NEPA and Executive Order 11988 by closing the trailer village.

In this case, defendants are not closing the trailer village because of the conclusions of a floodplain management study. Rather, the trailer village is being closed because of . . .



AO 72 (Rev 8/82)

the expiration of WBR's concessions contract.[6] Defendants' actions in allowing that contract to terminate and not obtaining a new concessioner are not actions falling within the purview of Judge Cordova's Order.

Plaintiffs have submitted expert testimony indicating that the NPS's Draft SEIS and Draft DCP suffer from deficiencies similar to those found by Judge Cordova in the 1979 litigation. Assuming arguendo that plaintiffs' expert is correct,[7] plaintiffs would still not now be entitled to injunctive relief. That is, defendants' decision to close the trailer village is not based on the Draft SEIS and Draft DCP. Rather, the trailer village is being closed because the concessions contract has expired.

At the January 12-13 hearings, plaintiffs argued that the expiration of the concessions contract is not a sufficient grounds for evicting them because they have lifetime tenancies. In support of this argument, plaintiffs pointed to that portion of Judge Cordova's Order stating that the concessioner could terminate a trailer village tenant's rental agreement only upon (1) failure of the renter to comply with

---

[6] Since the 1979 litigation WBR has been operating the resort and trailer village under a series of multi-year contracts ending in 1988 but thereafter extended annually by letter agreement through the end of 1993. WBR was unwilling to operate the resort in 1994 under another such extension with the prospect or, at minimum, the possibility of a termination on or before September, 1994.

[7] The court expresses no view as to whether defendants' expert is in fact correct.



AO 72
(Rev 8/82)

any of the terms and conditions of the agreement, and (2) failure of the renter to comply with any of the standards, rules and regulations established by the Superintendent and/or the concessioner.

That finding, however, was based on the explicit terms of the then-residents' rental agreements (referred to at the hearing as the "Old Lease"). However, defendants in this action contend that beginning in 1986, all tenants of the trailer village entered into new rental agreements (the "New Lease"). The New Lease states that the term shall commence on a date to be filled in by the parties and shall continue from month to month. The New Lease also contains a Termination Clause providing that "[t]his agreement may be terminated by either party by serving upon the other party a written notice of intent of such termination no less than thirty days before the effective date of such notice. . . . There shall be not be any holding over by tenant after thirty days notice to terminate has been served or termination of this agreement under any of its terms." WBR gave the 30 day notice to each tenant on November 12, 1993.

At the hearing, plaintiffs' counsel adamantly insisted that several of the current residents of the trailer village have not signed the New Lease and are still residing under the terms of the Old Lease. When pressed by the court to identify who those tenants are, counsel admitted that the only resident he was certain had not signed the New Lease was Betty



AO 72 (Rev 8/82)

Sweatnam. No evidence in support of that contention was offered. On January 14, 1994, however, the Federal Defendants filed a Motion to Supplement the Record, attached to which is a copy of the New Lease signed by Betty G. Sweatnam on March 25, 1986.[8] Thus, because plaintiffs have presented no evidence to the contrary, the court concludes that defendants' representation that all residents have entered into the New Lease is correct or, considering that plaintiffs have the burden of proof, they have not shown the corollary, that is, that any of them have rights under an "old" lease which have not been replaced by the signing of a "new" lease.

Plaintiffs next assert that the termination of the concessions contract does not extinguish plaintiffs' property interests. Plaintiffs argue that WBR's ownership rights to real property in Willow Beach continues after its concessions contract expires and that, by implication, plaintiffs' rights to real property are not extinguished by the termination of the concessions contract.

In support of this argument, plaintiffs point to a provision in WBR's concessions contract that "the Concessioner shall have a possessory interest in all concessioner's improvements consisting of all incidents of ownership, except legal title which shall be vested in the United States. . . . The said possessory interest shall not be extinguished by the

[8] To the extent it is necessary, the court grants Federal Defendants' Motion to Supplement the Record.



AO 72 (Rev 8/82)

termination of this contract." This contract provision is contained in a subsection entitled "Concessioner's Improvements" and traces language from section 20e of the National Park System Concessions Policy Act (the "Concessions Act"). See 16 U.S.C. § 20(e).

There are no cases indicating that the Concessions Act was meant to provide protection to a concessioner's tenants. Cf., 16 U.S.C. § 20(a) (Concessions Act meant to authorize Interior Secretary to encourage private persons and corporations to provide facilities at National Parks); National Parks and Conservation Ass'n v. Kleppe, 547 F.2d 673, 676 (D.C. Cir. 1976) (Concessions Act meant to ensure that concessionaires have a reasonable opportunity to profit from their investment). Moreover, to the extent that the concessions contract and the Concessions Act are applicable to the trailer village residents, they still do not support plaintiffs' position in this case. The provision plaintiffs point to merely gives the concessioner a possessory interest in any improvements that he has made. When a concessions contract expires, the concessioner may retain, assign or transfer his possessory interests in those improvements. 16 U.S.C. § 20(e). Indeed, the contract provisions following the clause identified by plaintiffs further spell out the details of how the concessioner may remove his improvements upon termination of the Concessions Contract. Nothing in either the Concessions Act or WBR's concessions contract can be said



AO 72
(Rev. 8/82)

to give plaintiffs a right to remain in the trailer village after the expiration of the concessions contract. In other words, no possessory rights to their individual trailer space devolve upon plaintiffs by virtue of the Concessions Act, WBR's concessions contract with NPS or, for that matter, under their 30 day tenancy agreements.

Plaintiffs' remaining argument is that the Arizona Mobile Home Parks Residential Landlord and Tenant Act (the "Landlord Tenant Act") requires 180 days notice before plaintiffs can be evicted. That Act requires, in part, that "[i]f a change in use is intended for the land on which a mobile home park or a portion of a mobile home park is located and the landlord intends eviction of a mobile home tenant due to a change in use . . . the tenant being terminated due to the change in use will receive a one hundred eighty day notice before the actual termination of the rental agreement." 33 A.R.S. § 1476(H)(2).

The Lake Mead National Recreation Area was created by the Lake Mead National Recreation Area Act (the "Lake Mead Act"), 16 U.S.C. § 460n. Plaintiffs argue that Arizona's Landlord Tenant Act is applicable to this case because of the provision in the Lake Mead Act that "[n]othing in this subchapter shall deprive any state, or political subdivision thereof, of its civil and criminal jurisdiction over the lands within the said national recreation area, or of its right to tax persons, corporations, franchises, or property on the lands included in such area." 16 U.S.C. § 460n-6.

The government responds that that provision of the Lake Mead Act does not give the State of Arizona the right to regulate the activities of the United States in the use and regulation of its federally-owned property. It contends that the Lake Mead Act gives the Interior Secretary broad discretion in administering the Lake Mead Area and that application of Arizona's Landlord Tenant Act would impermissibly interfere with that discretion.

There are no cases interpreting 16 U.S.C. § 460n-6. There is, however, an identical provision in the Indiana Dunes Lakeshore Act which was interpreted by the District Court in Town of Beverly Shores v. Lujan, 736 F. Supp. 934 (N.D. Ill. 1989). There, the Town of Beverly Shores attempted to invoke a local ordinance to prevent the federal government from paving a parking strip on federal land. The court held that the Town could not apply its ordinance, reasoning that:

> Plaintiffs contend that [the statute identical to 16 U.S.C. § 460n-6] gives them authority to regulate the parking spots. However, this provision merely provides the State of Indiana with civil and criminal jurisdiction and their right to tax persons and non-federal entities within the area, but it does not give the State of Indiana the right to regulate the activities of the United States in use of its federally owned property or facilities. . . . There is nothing in the statute which subjects the federal government to the local ordinances of the Town of Beverly Shores.

Id. at 944 (emphasis added).

The court agrees that Congress did not intend statutes like 16 U.S.C. § 460n-6 to subject the federal government to state laws. See, Santa Rosa Band of Indians v. Kings County,



AO 72
(Rev. 8/82)

532 F.2d 655, 661 (9th Cir. 1975), cert. denied, 429 U.S. 1038 (1977) (application of local zoning ordinances to Indian reservation trust lands would be inconsistent with Federal statute authorizing Bureau of Indian Affairs to provide housing). The court therefore concludes that defendants are not bound by Arizona's Landlord Tenant Act. To hold otherwise would be to allow the State of Arizona to impermissibly interfere with the federal government's discretion in administering federal lands.

After evaluating all of the arguments asserted by plaintiffs, the court finds that plaintiffs are not likely to succeed on the merits of their Complaint. As such, the court will not grant a preliminary injunction.

The court is concerned, however, that the closure of the trailer village be effectuated in a civil and orderly manner so as to allow the trailer village residents an opportunity to make arrangements for the removal of their trailers. The Federal Defendants stated at the January 13, 1994 hearing that they would not resort to self-help to remove the residents or the trailers, and the court expressly relies on that representation. When asked whether that restraint would also extend to the provision of utility services, the Federal Defendants' attorney stated that while he would counsel his clients to maintain the status quo, he could not guarantee the court that they would heed his advice. Because the court finds that such services should not be prematurely terminated



AO 72 (Rev 8/82)

during the transition period, it will preliminarily enjoin defendants from terminating utility services for a period of thirty days from entry of this order.

IT IS ORDERED denying plaintiffs' New Application for Order Enforcing 1980 Injunction, for Temporary Restraining Order and Order to Show Cause.

IT IS FURTHER ORDERED dissolving the Temporary Restraining Order entered on December 28, 1993 and extended on January 13, 1994.

IT IS FURTHER ORDERED enjoining defendants from terminating any and all utility services serving the trailer village, including mail service, trash service, television rebroadcast, sewer service, water service, electricity and the provision of propane for a period of thirty days from entry of this Order.

IT IS FURTHER ORDERED directing the clerk to delete the following named but unconsenting parties as plaintiffs in this action:

Edward Crowe
Chris Norelli
Brenda Halbert
Ken Nelson
Henry Lydekkers
Richard Peterman
Lynn Marrott
Don Beverage
Edward Burke, Jr.
Arnold and Ilene Dughman
Daniel Emery
Willie Fabry
Mary Feldhaus
Don Fillmore
John and Kathy Fisk



AO 72
(Rev. 8/82)

Richard Francis
Nat Gay
Lynda Kearan
Leslee Jo Kravets
Michael Likins
Rochelle Makres
Christopher Mangum
John Bruce McCreanor
Jim McLaughlin
Ron McPeak
Wess Monday
Lisa Morse
Clarence Nelson
Harry and Loretta Pascoe
Sandy Pastor.
Larry and Mary Quinton
Harold Raines
John Arnold See
Larry Sparing
Wyona M. Starr
Bill Stephens
Tom Stravato
Bill Tennis
Rich Totino
Richard Welsh
George and Fern West
Twyla Windsor
Kent Wood
Robert Wood
Edward Zorn

IT IS FINALLY ORDERED granting the Federal Defendants' Motion to Supplement the Record.

DATED this 27 day of January, 1994.

Robert C. Broomfield
United States District Judge

Copies to counsel of record



AO 72
(Rev. 8/82)