# Exhibit A

## Declarations of Robert White

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

| | |
|---|---|
| JOHN C. FRAZIER III and LINDA FRAZIER, d/b/a MARKLEY COVE RESORT; LAGUNA HERMOSA CORPORATION, d/b/a RANCHO MONTICELLO RESORT; REL LIMITED, d/b/a SPANISH FLAT RESORT; AND STEELE PARK RESORT, INC., Plaintiffs, v. UNITED STATES, Defendant. | No. 07-636C (Judge Lynn J. Bush) |

**DECLARATION OF ROBERT WHITE**

I, Robert White, pursuant to 28 U.S.C. § 1746, declare:

1. I am treasurer of Laguna Hermosa Corporation (d/b/a Rancho Monticello Resort), one of the Plaintiffs in the above-captioned matter. I have personal knowledge of the facts and circumstances in this case, including those set forth in Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction and Response to Defendant's Cross-Motion for Summary Judgment on the Administrative Record. I also have personal knowledge of the facts and circumstances of this case as they relate to the other Plaintiffs in this case (together, "the Resort Owners").

2. The Prospectus relies on appraisals for each of the Lake Berryessa resorts to determine the value of permanent property on the concession sites. In appraising the value of Plaintiffs' property, Reclamation appraisers conducted only a "cost approach" valuation of Plaintiffs'

property, contrary to the requirements set forth in the Statement of Work and the Instructions. The cost approach analysis is based solely upon an replacement cost estimate, less an estimate of the depreciation for the item. The cost analysis is therefore incomplete because it did not include numerous permanent improvements made by Plaintiffs.

3. Despite Reclamation claims to the contrary, the appraisal instructions came from the agency, not Plaintiffs. In response to a request from Plaintiffs, Reclamation's Mike Finnegan provided our consultant, Mike Kelly, with the appraisal instructions at issue. These instructions were provided to us under the representation that Reclamation would be using the instructions for its own appraisals.

4. By requiring Plaintiffs to remove all mobile homes and trailers from the concession property prior to the termination of the current concession contracts, the Prospectus imposes an impossible requirement on Plaintiffs. The California Department of Transportation only issues two permits for the transport of travel trailers and mobile homes per week. That number is insufficient to allow Plaintiffs to remove all of the mobile home property at the lake by the deadline imposed by the Prospectus. Reclamation knew this; nevertheless, the Prospectus provides that if any mobile units remain at the termination of the current concession contracts, Reclamation may disqualify the Resort Owners from consideration for the new concession contracts.

5. Reclamation's own process to approve property removal further hampers Plaintiffs' ability to meet the deadline for the removal of the mobile homes and trailers. Under Reclamation's plan, each mobile home tenant must submit a plan for removal of property, which the agency then reviews. Plaintiffs cannot initiate removal of the mobile homes without this prior written approval from Reclamation. Additionally, Plaintiffs have little, if any, control over

the preparation and submission of these individual plans and no control over their approval. To date, Reclamation has issued approvals for a mere fraction of the mobile homes at the lake.

6. Reclamation denied Plaintiffs' request for a blanket removal policy which would have expedited the removal process. Reclamation's insistence on individualized approvals prevents Plaintiffs' from removing all property by the termination dates established in the Prospectus and eliminates Plaintiffs' from consideration for the new concession contracts.

7. Where Reclamation has provided removal instructions, it has ordered Plaintiffs not to remove any property attached to the ground. Reclamation has declared that numerous property items and improvements must remain at the lake and therefore must be appraised and their owners compensated. These appraisals have not yet to be performed and have not been incorporated into the terms of the Prospectus.

I do declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Robert White

Executed on this 9th day of October, 2007.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
BID PROTEST ACTION

| | |
|---|---|
| JOHN C. FRAZIER III and LINDA FRAZIER, d/b/a MARKLEY COVE RESORT; LAGUNA HERMOSA CORPORATION, d/b/a RANCHO MONTICELLO RESORT; REL LIMITED, d/b/a SPANISH FLAT RESORT; AND STEELE PARK RESORT, INC. | Case No. ________ |
| Plaintiffs, | Judge ________ |
| v. | |
| UNITED STATES, | |
| Defendant. | |

**DECLARATION OF ROBERT WHITE**

I, Robert White, pursuant to 28 U.S.C. § 1746, declare:

1. I am Treasurer of Laguna Hermosa Corporation (d/b/a Rancho Monticello Resort), one of the Plaintiffs in the above-captioned matter. I have personal knowledge of the facts and circumstances in this case, including those set forth in Plaintiffs' Complaint for Injunctive and Declaratory Relief and Plaintiffs' Application for a Temporary Restraining Order and Motion for a Preliminary Injunction. I also have personal knowledge of the facts and circumstances of this case as they relate to the other Plaintiffs in this case (together, "the Resort Owners").

2. The Resort Owners are incumbent concessionaires for four of the seven concessions at Lake Berryessa that are the subject of the Prospectus. The Resort Owners operate the concessions by virtue of long-term concession contracts with the Bureau of Reclamation ("Reclamation").

3. In 1958, soon after the creation of Lake Berryessa, the Resort Owners entered into their concession contracts with Napa County, California, ("the County"), which was at the time Reclamation's recreation management contractor for the lake. Pursuant to its authority under its Management Agreement with Reclamation, the County determined that, due to limited resources and because a majority of the public use was by non-residents, recreation services and facilities at the lake should be provided through private concession contracts. As a result, the County actively sought out businesses, including the Resort Owners, to operate the Lake Berryessa concessions.

4. In soliciting the Resort Owners, the County promised that they would enjoy "economic stability" through long-term contract commitments. Accordingly, the County agreed to provide the Resort Owners with long-term contracts that were necessary to obtain bank loans for the development of visitor facilities.

5. As a result of the County's inducements, in 1958 and 1959 the Resort Owners and other concessionaires entered into seven long-term (30-year) concession contracts for recreation services on 1,700 acres of land and water at various sites around the lake. These agreements were later modified to allow for 50-year terms.

6. To achieve the overall purpose of their concession contracts, *i.e.*, to provide visitor services and facilities, Napa County granted permission to the Resort Owners to introduce, at their own expense, long-term mobile home/trailer lease sites at the lake. At the same time that the mobile home sites were being developed, the Resort Owners also developed some of the short-term facilities at the lake, *i.e.*, camping, lodging, marinas, and retail.

7. These long-term mobile home sites were an immediate success and have since become the core economic base for the Resort Owners' concession operations at Lake Berryessa. Today, there are approximately 1,300 such sites at the lake, the majority of which are part of the Resort Owners' concessions. The sites are almost fully occupied and account for approximately 50 percent of the overall revenue for the Resort Owners' concessions. Because of their permanent nature, the removal of these sites would result in environmental consequences, such as soil and vegetation disturbances. In addition, the removal of the sites could result in legal consequences. For example, because a great number of these sites are occupied by permanent tenants, their removal would implicate the protections of the California Mobile Home Residency Act.

8. To fulfill the purposes of the concession contracts, the Resort Owners over the years have invested millions of dollars, as well as substantial time and effort, in constructing amenities and improvements at the resorts. Indeed, since the creation of Lake Berryessa, the Resort Owners' concession operations have provided the great majority of visitor services and amenities at the lake.

9. The Resort Owners' amenities include lodging units, restaurant facilities, extensive marina and boating facilities, and water and electricity systems. The improvements include, but are not limited to: grading and earth moving for parking lots, road and site construction, marinas for both small watercraft and large houseboats, docks, boat slips, fuel stations, food service and retail facilities, shop buildings, bath houses, cabins, motels, travel trailer sites, tent campsites, mobile home sites, picnic areas, boat storage buildings, boat storage lots, extensive landscaping, electric and water distribution systems, sewage distribution and treatment systems, and water purification systems.

These improvements and facilities serve hundreds of thousands of visitors each year. Many of these improvements cannot be removed because they involve improvements and alterations to the land.

10. The foregoing improvements were paid for solely by the Resort Owners, and for the purpose of fulfilling Reclamation's public visitation mission at the lake, after obtaining prior approval from Reclamation. Reclamation has benefited from the construction of these improvements, both economically and in terms of fulfilling its "public enjoyment through recreation" mission. In addition, both Reclamation and any future concession awardee will benefit from the construction of these improvements. If the Prospectus is not enjoined by this Court, the Resort Owners will lose their substantial investments in the concessions, with Reclamation and Forever Resorts the likely recipients of the resulting windfall.

11. The Prospectus, in its current form, unfairly and unlawfully favors Forever Resorts, a large corporate provider of house boat rentals and other concession services and the only large corporation known to be interested in the Lake Berryessa procurement. For example, the Prospectus identifies the Environmental Management Plan ("EMP"), Maintenance Plan, and Operation Plan of Forever Resorts as being acceptable, thus "pre-qualifying" Forever Resorts as an awardee for the new concession contracts. In addition, the Prospectus allows a new bidder, such as Forever Resorts, to receive a reduction of franchise fees owed to Reclamation to repay any costs associated with tenant removal. In contrast, the Prospectus does not provide the Resort Owners such fees while demanding that they pay all costs for removal of tenant personal property.

12. Moreover, Reclamation has deemed houseboats rentals, which happen to be Forever Resorts' primary business, to be a preferred service. Indeed, houseboat rentals constitute the only service which enjoys "exclusive use" status on the lake without penalty.

13. In contrast, the Prospectus discriminates against the Resort Owners in many ways. First, the Prospectus imposes an impossible requirement upon the Resort Owners before they may qualify for the new contracts, *i.e.*, the Resort Owners must remove all mobile homes, trailers and other improvements from the concession property prior to the termination of the current concession contracts. This effectively disqualifies the Resort Owners from consideration for the new concession contracts because the removal of all private property cannot be achieved before the termination of the Resort Owners' current contracts in 2008-2009. This is so because, in order to comply with California environmental and transport regulations, the complete removal of the property could take as long as five years. In this respect, Reclamation has failed to account for delays that will be associated with the limited number of state-issued permits that are available to transport mobile homes and with the resolution of the county tax liens that are attached to certain abandoned mobile homes.

14. Even if it were physically possible to remove all tenants by the removal deadline, the Resort Owners would have to begin removing tenants well in advance of the termination of the current concession contracts. This would place the Resort Owners in the impossible position of being in potential breach of their contacts with their tenants, which run until the end of the current concession contracts. The disputes and delays with

tenants that would be associated with these potential breaches would make it impossible to meet Reclamation's removal deadline.

15. Reclamation is required to identify all of the property and improvements that are to be removed by the Resort Owners. Reclamation also is required to complete an Environmental Impact Statement for the removal of individual improvements. Reclamation has failed to complete either of these tasks. Reclamation's failure to satisfy these obligations also renders it impossible for the Resort Owners to comply with Reclamation's removal deadline.

16. The Prospectus also discriminates against the Resort Owners by requiring that, if any mobile units are left after the termination of the contracts, the Resort Owners may be declared in default of their agreements. This could lead to the seizure of their permanent improvements, thereby depriving the Resort Owners of all value from their investments in the concession contract sites.

17. The Prospectus further discriminates against the Resort Owners by not allowing the Resort Owners to remove the mobile homes in phases during the term of a new concession contract, should one be awarded to a Resort Owner. As a result, the Resort Owners will be deprived of a revenue source that is critical to their ability to stay in business while awaiting the installation of the new facilities. This could result in business failure for some or all of the Resort Owners.

18. The Prospectus employs a valuation measure, Fair Market Value, that is different from the Fair Value metric required by Public Law 96-375. The adoption of Fair Market Value has resulted in an improper undervaluation of the Resort Owners' assets. As just one example, the Fair Value for Rancho Monticello has been appraised at

$27,500,000 while Reclamation's appraisal is for $11,250,000. The Fair Value appraisals for the other resorts have resulted in similar discrepancies with Reclamation's appraisals.

19. The Prospectus relies upon appraisals for each of the Lake Berryessa resorts. The valuations performed by the appraisers are defective because the appraisers neglected to comply with the Statement of Work and the Instructions by failing to:

a. Consider the Resort Owners' improvements to the land, including, but not limited to, such items as "cut and fill" work, grading, road construction and parking lots;

b. Include improvements such as retaining walls, dock facilities, mobile home site pads, sewage and utility connections, and similar improvements; and

c. Conduct an evaluation of the concessions by all three appraisal methods, performing instead only a "Cost Approach" appraisal.

20. If the Prospectus is not enjoined, the Resort Owners will be irreparably harmed because they may be forced to either: (i) transfer their facilities and concession operations to a new concessionaire at a substantially undervalued price; (ii) tear down the facilities and other personal property at their own expense; (iii) abandon the facilities, in which event either Reclamation or the new concessionaire will assume control and/or ownership at no cost.

21. If the Prospectus is not enjoined, the Resort Owners will be irreparably harmed because, in the event they try to remove all of their property off of the surrounding areas by the concession contract termination dates, they may be found to be in breach of their contracts with tenants. If the Prospectus is not enjoined, the Resort Owners will lose their right to a legally valid procurement and lose anticipated profits. If

the Prospectus is not enjoined, the Resort Owners will lose their customers and their contractual right to make a fair profit prior to the expiration of their agreements.

22. As incumbent contractors, the Resort Owners are ready, willing, and able to continue to perform under the terms of the existing contracts until the Court resolves this matter. The Lake Berryessa visitor services will continue to be available to Reclamation and the public under the terms of the existing contracts.

23. Reclamation has imposed an accelerated schedule for its procurement during the peak visitor season for the Resort Owners. Recently, Reclamation solicited opinions from the Resort Owners regarding an extension of the September 5 deadline for proposals. In so doing, Reclamation indicated that it was amenable to such an extension. Some of the Resort Owners did not favor an extension, however, because it was not accompanied by a commensurate extension of the termination dates for the current concession contracts. This would have rendered the period between contract award and the termination dates, during which the Resort Owners would be compelled to achieve numerous difficult tasks, such as tenant removal, and site removal and development, in an even shorter period.

24. In addition, the Prospectus incorporates an Environmental Compliance and Facility Condition Assessment Report prepared by Kleinfelder, Inc. and dated December 19, 2002. The Kleinfelder Report purports to assess the condition of the various facilities for each of the resorts. In response to this Report, the Resort Owners performed in a timely manner the necessary maintenance and improvements that corrected the conditions identified in the report.

25. The Prospectus allows a new bidder, such as Forever Resorts, to receive a reduction of franchise fees owed to Reclamation to repay any costs associated with tenant removal. In contrast, the Prospectus does not provide the Resort Owners with such fees while demanding that they pay all costs for removal of tenant personal property.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Robert White

Executed on this 20th day of August, 2007.