Fed Ex'd 10/15
pdf sig 10/15

# EXHIBIT A

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **JOHN C. FRAZIER III and LINDA FRAZIER, d/b/a MARKLEY COVE RESORT; LAGUNA HERMOSA CORPORATION, d/b/a RANCHO MONTICELLO RESORT; REL LIMITED, d/b/a SPANISH FLAT RESORT; and STEELE PARK RESORT, INC.,** | **Bid Protest** |
| **Plaintiffs,** | **No. 07-636C** |
| **THE UNITED STATES,** | **(Judge Lynn J. Bush)** |
| **Defendant.** | |

**DECLARATION OF PEDRO A. LUCERO**

I, Pedro A. Lucero, make the following declaration in lieu of an affidavit, as permitted by Section 1746 of Title 28 of the United States Code. I am aware that this declaration will be filed with the United States Court of Federal Claims and that it is the legal equivalent of a statement under oath. This declaration is provided for the limited purpose of the Governments' Opposition to Plaintiffs' Motion for Preliminary Injunction and Cross Motion for Summary Judgment Upon the Administrative Record.

1. I am the Chief of Recreation Resources for the Central California Area Office of the Mid-Pacific Region of the Bureau of Reclamation ("Reclamation"). I am responsible for the oversight and management of recreation activities at Lake Berryessa and New Melones Lake, California. I have been employed by Reclamation for three years. Prior to my employment with Reclamation I was a management employee of the National Parks Service for 15 years, with oversight of facility management and concession oversight in several National Park units in

California and Hawaii. While at the National Parks Service, I also served as a Congressional fellow, assigned to the United States Senate, National Park Service sub-committee of the Energy and National Resources committee, working directly under the Chairman of that committee. As part of my responsibility in that regard I worked on concession legislation affecting the National Park Service.

2. As Chief of Recreation Resources for the Mid-Pacific Region, I am ultimately responsible for concession contract oversight at Lake Berryessa, ensuring compliance with all aspects of the concession contracts. I have also been responsible as project manager for the entire process of preparing the Prospectus issued by Reclamation on June 7, 2007, that is the subject of plaintiffs' action in this case.

3. While there can be no precise estimate of the effect of an improperly imposed injunction upon Reclamation, it is my reasoned belief that, if an injunction setting aside the Prospectus is granted as a result of plaintiffs' motion, (1) Reclamation would likely be unable to award new concession contracts prior to the expiration of the first four existing concession contracts, and (2) even after an award pursuant to a new Prospectus, new concession areas will not be even minimally operational for at least another six months after the new concession contracts are put into effect because of the delay likely to be imposed by an injunction. The costs incurred by Reclamation as a result of such a dely would include:

a) $75,000 for the costs in contract and staff time incurred in developing a new Prospectus;

b) $10,000 for the costs in reassembling a team of experts needed to evaluate bid proposals submitted in response to a new Prospectus

c) $350,000 in costs for security services from the point of the expiration of the contracts concerning the four concession areas listed below, until new contracts could be put in place pursuant to a new Prospectus. It is our best estimate, after the expiration of the existing concession contracts, new contracts will be in place and contractors on site no earlier than September 15, 2008. Therefore, based on previous security cost expenditures we have incurred at Lake Berryessa,[1] it is my estimate security costs for individual concession areas would be:

| RESORT | EXPIRATION DATE | NEW CONTRACT | SECURITY COST |
|---|---|---|---|
| Rancho Monticello | June 15, 2008 | September 15, 2008 | $150,000 |
| Spanish Flat | July 13, 2008 | September 15, 2008 | $100,000 |
| Berryessa Mar | August 13, 2008 | September 15, 2008 | $50,000 |
| Putah Creek | August 13, 2008 | September 15, 2008 | $50,000 |
| | | Total: | $350,000 |

d) $171,000 for lost franchise fees. This figure is composed of two factors. First, I estimate $57,000 for franchise fees lost due to the projected delay, calculated from the point of the expiration of the existing contracts until the start of the new contracts. This estimate is based upon the historic fee revenues and it follows from the fact that, with the anticipated delay, there will be a loss of franchise fees due to a lack of concession contractors on site. The anticipated average franchise fees lost for each concession contract are:

---

[1] This historical information, as well as historical information concerning the franchise fees paid to Reclamation from the four existing concession areas described herein, can be made available to the Court, should it be necessary.

| RESORT | EXPIRATION DATE | NEW CONTRACT | FRANCHISE FEE |
|---|---|---|---|
| Rancho Monticello | June 15, 2008 | September 15, 2008 | $30,000 |
| Spanish Flat | July 13, 2008 | September 15, 2008 | $15,000 |
| Berryessa Mar | August 13, 2008 | September 15, 2008 | $10,000 |
| Putah Creek | August 13, 2008 | September 15, 2008 | $2,000 |
| | | Total: | $57,000 |

Second, lost revenues would apply beyond the "gap" between expiration of old contracts and award of new contracts. One of the principal reasons for an early award of the new concession contracts was to allow sufficient start-up time for new contractors to get set up, organized, and plan initial operations while Reclamation continued to collect franchise fee revenues from existing contractors. The delay in an award now would likely extend that start-up period at least six months after the beginning of the new contracts' periods. During that period, contractor revenues would be likely be negligible. Since franchise fees are calculated as a percentage of gross revenues, the United States would be significantly harmed. I estimate that an additional six months of lost franchise fees would total $114,000, as detailed below:

| RESORT | EXPIRATION DATE | LOST FRANCHISE FEES (Starting Sept. 15, 2008) |
|---|---|---|
| Rancho | June 15, 2008 | $60,000 |
| Spanish Flat | July 13, 2008 | $30,000 |
| Berryessa Mar | August 13, 2008 | $20,000 |
| Putah Creek | August 13, 2008 | $4,000 |
| | Total: | $114,000 |

e) In addition there are other costs that Reclamation is likely to face should plaintiffs' injunction be granted, but that, at this time cannot be readily quantified. These include costs incurred by the deprivation of the receipt of development proposals from other offers who lose interest or will be intimidated into withdrawing from offering proposals as a result of an injunction of the Prospectus.

4. Given the foregoing, it is my reasoned belief that Reclamation will bear costs totaling at least $606,000 if plaintiffs' motion for an injunction is granted.

I have read the foregoing five pages, and declare under penalty of perjury that the information stated therein is true and correct to the best of my knowledge.

Dated: October 15, 2007

Pedro Lucero
Chief of Recreation Resources
Central California Office
Mid-Pacific Region
Bureau of Reclamation